[S. F. No. 6310.   In Bank.—August 22, 1912.]

## CONTINENTAL BUILDING AND LOAN ASSOCIATION (a Corporation), Petitioner, v. SUPERIOR COURT OF THE STATE OF CALIFORNIA IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO, DEPARTMENT NO. 1, and J. M. SEAWELL, Judge Presiding, Respondents.

BANKRUPT—MEANING UNDER FEDERAL STATUTE.—A person is a bankrupt within the meaning of the federal statute (1 Fed. Stats. Ann. Supp. 1912, p. 464), only when he has been guilty of one or another of the forbidden acts whose commission stamp him as a bankrupt.

ID.—STATE MAY PREVENT CONDUCT OF BUSINESS FOR ACTS NOT AMOUNTING TO BANKRUPTCY.—A state may, for good reasons of its own, prevent a person or corporation from conducting business, and in so preventing it take control of its affairs, terminate its business, and pay its creditors, for acts entirely foreign to and absolutely without the contemplation of bankruptcy.

ID.—STATE PROCEDURE ANALOGOUS TO FEDERAL—PROCEEDING NOT IN BANKRUPTCY.—If the state does so for acts not within the contemplation of the bankruptcy law, it does not follow that because the procedure which it adopts for the payment of creditors is similar to or identical with the procedure adopted in case of bankruptcy, therefore the proceedings are in bankruptcy.

ID.—BUILDING AND LOAN COMMISSIONER'S ACT—OPERATION NOT SUSPENDED BY BANKRUPTCY ACT.—The state act known as the Building and Loan Commissioner's Act, while in certain features a bankruptcy act, contains provision entirely foreign to the National Bankruptcy

Act, or to the legal concept of bankruptcy, and the whole operation thereof is not suspended by virtue of the federal statute.

Id.—Proceeding in State Court—Liquidation of Building and Loan Association—Finding of Insolvency or Bankruptcy—Suspension or Continuance of Proceeding.—In a proceeding instituted under section 9 of the State Act for an order of the superior court confirming the action of the building and loan commissioner in taking charge of the affairs of a building and loan association preparatory to their liquidation, if the investigation which that court is authorized to conduct shall result in a finding of bankruptcy or insolvency within the meaning of the Federal Act, then, under such finding or judgment, by force of the Federal Act itself, the jurisdiction of the state court would be suspended and further proceedings would necessarily be had before the federal bankruptcy courts, as contemplated by section 3, subdivision 4 of that act. If, upon the other hand, it shall appear upon the hearing that the corporation is neither a bankrupt nor an insolvent within the meaning of the Federal Bankruptcy Act, but is accountable under the provisions of section 9, then the state court has power to proceed in conformity with the state law.

Id.—Prohibition Does not Lie Against State Proceeding.—A building and loan association, claiming to be neither insolvent nor a bankrupt within the meaning of the Federal Bankruptcy Act, cannot maintain a writ of prohibition to restrain such a proceeding in the state court, on the mere ground that the federal courts, under the Bankruptcy Act, has exclusive jurisdiction of the subject matter.

APPLICATION for a Writ of Prohibition directed to the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Gavin McNab, B. M. Aikins, R. P. Henshall, and A. H. Jarman, for Petitioner.

U. S. Webb, Attorney-General, and Robert W. Harrison, Deputy Attorney-General, for Respondents.

HENSHAW, J.—This is an application for writ of prohibition directed to the respondents above named, restraining them from proceeding further with the case of the *People of the State of California upon relation of George S. Walker* v. *Continental Building and Loan Association.*

The ground for the application is that the court is proceeding without and in excess of its jurisdiction. The reasoning upon which this ground is based is that the states have surrendered to the general government the power to pass "uniform laws on the subject of bankruptcy throughout the United States"; that Congress has passed such a law (1 Fed. Stats. Ann. Supp. 1912, p. 464, [30 Stats. 544, U. S. Comp. Stats. 1901, p. 3418] ; that *ex proprio vigore* this statute suspends the operation of all state bankrupt or insolvency laws; that the state law under which the superior court is proceeding, known as the Building and Loan Commissioner Act (Stats. of California, 1911, p. 607) is such a bankrupt or insolvency law. If these positions are well taken the conclusion for which petitioner contends is irresistible, for it is conceded that petitioner is a corporation conducting a business which brings it within the scope and purview of the National Bankruptcy Act, and it is unquestioned that when the general government has spoken upon the subject of bankruptcy, the operation of all state laws upon the same subject matter is suspended. The ultimate question, then, is whether under these concessions and admissions there is still left in the state law any valid provisions entirely without the scope of the National Bankruptcy Act, which provisions may be enforced by the state courts, or whether, as petitioner earnestly contends, the state law is as a whole, and without severable or separable parts a single bankruptcy or insolvency act.

Preliminary to this consideration, since the states, out of their plenary powers of sovereignty, have conferred upon the United States the power to pass "uniform laws on the subject of bankruptcy" only, it is proper, if not necessary, to consider who, within the meaning of this grant of power, is a bankrupt or what is bankruptcy. Philologically and historically, a bankrupt is but a broken bank or bench. Such bank or bench or "counter" as we would in this day designate it, was the bench over which the money lender, trader, or merchant transacted his business, and it was broken for or by him as an evidence of the discontinuance of his business. At English law at the time of the adoption of our constitution the meaning of the word was usually limited to persons engaged in trade in one form or another who did certain acts affording evidence either of an inability to pay their debts

or of an intention to avoid such payment.    Other persons not engaged in trade and who showed a like disposition to avoid or a like inability to meet their obligations to their creditors were ordinarily called insolvents.    By definition in the last Federal Bankruptcy Act, insolvents as well as bankrupts proper are included, and the only persons exempt from the operation of the present national law are "wage earners" and "persons engaged chiefly in farming or tillage of the soil." Whether or not this is an extension of the common law definition of a bankrupt and is justifiable is not a matter of present interest.    A bankrupt, then, being as defined, a person who by his acts and conduct affords evidence of his inability to pay or his intention to avoid payment of his debts, it is quite within the scope of the Bankruptcy Act to define the acts or omissions of the debtor which shall afford *prima facie* or conclusive evidence of bankruptcy.    This the National Bankrupt Act has done.    Section 3 declares:

"Acts of bankruptcy by a person shall consist of his having:

"(1) Conveyed, transferred, concealed or removed, or permitted to be concealed or removed, any part of his property with intent to hinder, delay or defraud his creditors, or any of them; or

"(2) Transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors;

"(3) Suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and not having at least five days before a sale or final disposition of any property affected by such preference vacated or discharged such preference; or

"(4) Made a general assignment for the benefit of his creditors, or, being insolvent, applied for a receiver or trustee for his property, or because of insolvency, a receiver or trustee has been put in charge of his property under the laws of a state, of a territory, or of the United States; or

"(5) Admitted in writing his inability to pay his debts and his willingness to be adjudged a bankrupt on that ground."

Bankruptcy proceedings are primarily designed for the protection of the creditors and have for their principal object the payment of the debts of the bankrupt, and to this end the

distribution of his assets ratably amongst his creditors under equitable principles. Secondarily, though not necessarily, such acts usually contemplate the relief and discharge of the debtor upon full disclosure of his property and compliance with the law. The court in bankruptcy simply marshals the assets of the debtor and distributes them, having regard to the preferences created by law. All other proceedings, such as the dissolution of attachments, the barring of nonpresented claims and the like, are mere incidents which may or may not be found in a bankruptcy act, and which, if not found, in no sense affect its construction as a bankruptcy act.

Even so far as this consideration has proceeded, it must be clear, we think, that a person is a bankrupt within the meaning of the federal statute only when he has been guilty of one or another of the forbidden acts whose commission stamp him as a bankrupt. It does not at all follow that the state, for good reasons of its own, may not prevent a person or corporation from conducting business, and in so preventing it take control of its affairs, terminate its business and pay its creditors for acts entirely foreign to and absolutely without the contemplation of bankruptcy. And if the state does this thing for acts not within the contemplation of the bankruptcy law, it is futile to argue that because the procedure which it adopts for the payment of creditors is similar to or identical with the procedure adopted in case of bankruptcy, therefore the proceedings are in bankruptcy. To illustrate: It is competent for the state to declare that if a corporation shall lend· any money to one of its directors, its charter shall be forfeited, its business cease, its affairs be wound up by the state courts and its creditors paid, and that the provisions of the law and the machinery applicable to proceedings in bankruptcy shall one and all be applied in such a case. This does not make the proceeding one in bankruptcy. Indeed, the corporation may be concededly solvent, prosperous, and in all respects conducting a safe and conservative business; but it has violated the law and as a consequence of its violation has forfeited its right to do business. Having forfeited this right it becomes necessary that its business affairs should be wound up and its creditors paid. And certainly the state has the right to direct the method or methods by which this shall be done. If further elucidation of this proposition, which seems so plain, be

considered necessary it will be found in the answer to this question: Could a corporation be decreed a bankrupt in the bankruptcy courts of the United States under a state law which declared that its charter should be forfeited, its business cease and its affairs be wound up if it lent money to its directors? There can be but one answer to this question. The federal statute does not contemplate that a bankruptcy can arise by any such act. Yet, upon the other hand, it is certainly within the sovereign power of the state to decree that such an act shall work the forfeiture of a charter and to provide for the termination of the company's business and the payment of its debts.

So we are brought to the ultimate question in this consideration: Is the state statute above referred to simply a bankruptcy act, the whole operation of which is suspended by virtue of the federal statute, or, conceding it to be in part a bankruptcy act, is it something different as well? That it is a bankruptcy act in the sense that it contemplates and provides that procedure shall be taken against a corporation which is insolvent admits of no doubt. Indeed section 13 of the act provides for punishment of the commissioner if "having knowledge of the insolvent condition . . . of any such association, corporation or society" he neglects or refuses to perform his official duty. The act itself contemplates that under these proceedings the insolvency of the corporation may be disclosed and prescribes the duties of the court and commissioner if such insolvency is found to exist. But, upon the other hand, the law also contemplates that for other acts amounting to neither bankruptcy under the federal law nor to insolvency in its general definition, the state may either check the practices of such a corporation until it ceases them and reforms its business methods, or it may terminate the business absolutely; not because of bankruptcy nor insolvency, but to protect the public against practices which may lead to such results. Again, the law contemplates that the same procedure shall follow if such an association violates "the provisions of its charter or the laws of this state provided for its government." And here, as in the instance above cited, a corporation may subject itself to state intervention and control for one or another of these violations which may have nothing to do with and no bearing whatsoever upon the question of its

bankruptcy or insolvency.   All this is made plain by section 9 of the act, the opening paragraph of which is the following:—

"If the commissioner, as the result of any examination, or from any report made to him or to the shareholders shall find that any association, corporation or society licensed by him, is violating the provisions of its charter, or of the laws of this state provided for its government, or is conducting its business in an unsafe or unauthorized manner, he may, by an order addressed to the association, corporation or society so offending, direct a discontinuance of such violations or unsafe practices and a conformity with all the requirements of law; and if such association, corporation or society shall refuse or neglect to comply with such order within the time specified therein; or if it shall appear to the commissioner that any such association, corporation or society is in an unsafe condition, or is conducting its business in an unsafe manner, such as to render its further proceeding hazardous to the public or to those having funds in its custody; or if he shall find that its assets are impaired to such an extent that, after providing for all liabilities other than to shareholders, members and investors, they do not exceed in volume the dues or principal payments paid in by the shareholders, members and investors and credited to or on account of all classes of stock, shares, or certificates of investment, issued and outstanding, he shall, in order to prevent waste and diversion of assets, assume and take charge of the affairs and business of such association, corporation or society and possession and control of all its property and assets, and retain such possession pending action by the proper court.   Upon taking such action, he may, under his hand and official seal, appoint a custodian, require from him a good and sufficient bond, and place him in charge as his representative.   He shall immediately notify the attorney-general of his action and of all the necessary facts in connection therewith; and thereupon it shall become the duty of the attorney-general to at once apply to the superior court of the county in which such association, corporation or society has its principal place of business, for an order citing such association, corporation or society to show cause, if any it may have, within not exceeding ten days, why the action of the commissioner should not be approved and confirmed by the

court, and made permanent. Such court may in such application, and after a full hearing, approve or disapprove of the action of the commissioner. If the court shall approve and confirm the action of the commissioner, such approval and confirmation shall operate as a permanent injunction against the further prosecution of business by such association, corporation or society, and the commissioner shall proceed immediately to liquidate the business and affairs thereof, and so continue until such liquidation has been completed. If the action of the commissioner shall be disapproved by the court, the commissioner shall cause all reasonable expenses incurred by him during his occupancy or possession, including not exceeding eight dollars per diem, for each business day, as the compensation of the custodian, to be paid from the funds of such association, corporation or society, and immediately restore the balance of the property and assets thereof to the possession of the proper officers.''

We conclude, therefore, that the act known as ''The Building & Loan Commissioners Act'' while in certain features a bankruptcy act, contains provisions entirely foreign to the National Bankruptcy Act or to the legal concept of bankruptcy. If the investigation which the state courts are authorized to conduct shall result in a finding of bankruptcy or insolvency within the meaning of the Federal Act, then, under such finding or judgment, by force of the Federal Act itself, the jurisdiction of the state courts would be suspended and further proceedings would necessarily be had before the federal bankruptcy courts, as contemplated by section 3, subdivision 4 of that act. If, upon the other hand, it shall be disclosed upon hearing that the corporation is neither a bankrupt nor an insolvent within the meaning of the Federal Bankruptcy Act, but is accountable under the provisions of section 9 as above set forth, then the power of the state court to proceed in conformity with the state law may not be questioned. Petitioner's position, however, is that it is not insolvent; that it has done nothing in violation of the National Bankruptcy Act, but that, nevertheless, it is entitled to appeal to that act and its exclusive jurisdiction to protect it against these proceedings in the state court. With this position we cannot agree.

For these reasons the application for a writ of prohibition is denied.

Lorigan, J., Melvin, J., and Sloss, J., concurred.